May it please the court, my name is Ben Cooper. I represent Intervenor Appellant Quellos Group. As we stand here today, we now have three sets of issues. Mootness and vacature, subject matter waiver, and crime fraud exception. With the court's indulgence, I'll start with the jurisdictional issue of mootness and vacature and then go in that order. Can I just ask you, when you're talking about mootness, will you also talk about Mohawk Industries? The jurisdictional issue? I think it goes very much to the jurisdictional issue and whether the Supreme Court's very strong language against interlocutory appeals of attorney-client privilege matters, how that plays into this matter. In fact, I'll begin with that issue. I don't think we have a Mohawk situation because Mohawk was concerned with the situation of a party who has a right of appeal from the end of the case and is seeking an interlocutory ruling. And the court explains, well, you know, there's mandamus and there is a 1292 of the appeal. You don't have that situation in a Perlman case where you've got a non-party whose documents are in the hands of a disinterested custodian and there is no further involvement in the case. That's the end of the story. Mohawk was dealing with a situation where the law was clear in all but three circuits and all but clear until recently that the Perlman doctrine and what's now the national Mohawk rule were side-by-side. That is, you couldn't take an interlocutory appeal as a right from an order of compelling production. But if you fell under Perlman, you could take an appeal as a right. Given the timing, there's no case law that we've been able to find addressing Perlman after Mohawk. The one case I do have saw from another circuit addressed them separately but did not say Perlman is still vital. So all we can do is to look at what the rationale was in Mohawk, and that was dealing with a party who would be able to get relief down the road. But for a non-party in Quellos' position, it's the end of the line. It's essentially a final order, and I think Perlman is still vital in that situation. So if we go to mootness and we agree with you, aren't we going to be here in another couple of months? We may, but it's a different situation. Tell me why. Why isn't that one of these things that falls under the evading review exception? Well, it's not going to evade review. It may be capable of repetition. That is, we could potentially be back here on the privilege issue if the district judge overrules the other objections Quellos would have. That is, the hurdles of specificity, relevance, and visibility of these documents for purposes of sentencing. That is, if it is capable of repetition, there would be a review in that. Right. But likely, you know, these go first to a motions panel. It would be very tough to get you to an oral argument before a merits panel before sentencing. That's correct, although there is a timing. You know, we're now not a week away. We're now four months away. So presumably, depending on what the court decides to do, there would be motion practice related to a motion to quash the subpoena, and then there would be a ruling on it. But we believe that, you know, once the trial is gone, you know, trial subpoenas under Federal Rule 17 are not a discovery device. They are very much, you know, proceeding-specific orders. So when the proceeding goes away, so does the subpoena for which that was designed for that proceeding. And if, speculatively, there was a withdrawal plea and a trial one day, there would have to be a new subpoena. You know, there's now a sentencing hearing and there's a subpoena for that. And that's going to have to be evaluated under Rule 17 for the first instance by the district court. What's the impact of the new subpoena on the old subpoena? Does the old subpoena survive or does it just disappear automatically? We think it disappears automatically. Do you have any case law to that effect? No, we tried to find it. I think the AUSA's initial response, which was that it was null and void, was the correct one. And you don't see case law. We cited the Afrimov case, which is what the government cited, which was the only authority we could find. And trust me, we were looking for authority to figure out what the result would be for this proceeding. But logically, if it's designed, if it's not a discovery device and it's designed for a specific proceeding, once that proceeding goes away, so does the discovery device. And now the Court is in the realm of an advisory opinion as to what would be the case under a new subpoena issued for a different proceeding. Well, from your perspective, there's really no case or controversy before us. Right. There may one day be under the new subpoena, but not now. The government's argument is really... It really is the same issue, though, isn't it, under the new subpoena? Or are there different issues that you see? It could be a different issue. That is, it's being issued for a different purpose, for a very limited purpose. From what we can see, the only issue is whether it's going to... we're in the range from two to six years of imprisonment, defendants will be sentenced. That's a much more limited question than the guilt or innocence on the underlying criminal charges. And, you know, we only get back to the privilege issues if the Court decides to, you know, issue a subpoena or deny a motion to quash. And it's speculative at this point. We're in the realm of an advisory opinion as to a subpoena that may not go forward for that proceeding. You know, the District Court's order is not some kind of freestanding obligation or a declaration of rights. It's an order-compelling response to a trial subpoena. It has no greater life than the trial subpoena it's enforcing. And it's essentially, you know, that subpoena was ancillary to what is now a nonexistent proceeding. Because the government obtained its objective in getting the subpoenas in the first place, i.e., the confession of guilt by the two parties. That's correct. And it should be noted, well, for purposes of vacature, while the government analogizes that to a settlement, it's not a settlement involving Quellos. This is not a case where, you know, we folded and entered into a settlement, and we're now trying to get vacature. That would clearly – And that's how you also distinguish Mohawk, because Quellos is not a party. That's correct. We're dealing solely with the order-compelling production of our privileged documents. But I assume that you would not want any mootness holding on our part to stand alone without a vacature, right? That's correct. So what's your argument on vacature? Well, the argument on vacature is, I understand, and we cited it up front, that this Court has recognized it's an open issue whether months and where vacature applies in criminal cases. And I understand that, you know, it might be an interesting question if the party were seeking to vacate a criminal conviction under Munson-Wear. But this is not. We applied it in one case. I'm sorry? We have applied it in one case, although it was not – I don't think we cited Munson-Wear. That's in the Anbanca case, rising out of the Ruby Ridge prosecution. And other circuits have as well. The analysis of Munson-Wear really applies equally here, because we're not a criminal defendant. We're a non-partner being forced to produce its privileged, certainly privileged documents in the same way that a party in a civil case might. And we should no more be burdened with an order vitiating our privilege than should a party to a civil case facing the same kind of order. Who owns Qoyos? Isn't it the same people who confessed to the crime? No. The ownership structure, as our certificate of interested parties indicates, is a more complex structure. And it's a separate entity from the two defendants, one of whom was a principal, one of whom came later to the organization. I guess what I'm getting at is, is there any case law that requires us to look beyond Qoyos itself, getting back to the Mocock situation? Let's just say hypothetically, if you had the same two people who confessed to the crime, if they were the sole owners of Qoyos and had complete control over it, would you agree that there would be a potential Mohawk kind of a problem? I don't know. These two individuals are former executives at this point. So even if there were some kind of interesting question, if their status within Qoyos had continued, I think it doesn't anymore. I guess what I'm struggling with is, if these people are not influencing Qoyos to assert the privilege, who is and why are they doing it? What's the point? Why is Qoyos asserting the privilege? Why are they asserting the privilege, both work product and attorney-client privilege? Not work product. In this case, it's only attorney-client privilege. Okay. Well, the relevance of Skadden is Skadden was longtime counsel for Qoyos for things unrelated to this, and they were standing on it. And the government says, well, if this weren't truly damaging information, why would you be asserting the privilege? Well, parties do it all the time. So they're concerned about discovery of other things irrelevant to the criminal prosecution. Other things irrelevant, potential use of privileged information for proceedings other than this criminal prosecution. There are lots of reasons people stand and fight on their privilege, particularly when it's for their longtime counsel. Cravath was different. Cravath was hired for purposes of advising as to the point transaction. That wasn't the case for Skadden, which is, you know. Don't waive anything yet. I'm sorry? Don't waive your privilege by telling us what's in there. No. No, I know. You said that. It's in the record. I've managed to safeguard against that by not reviewing them myself. Yeah. So they're not in the record. Let me talk briefly in my time remaining about the two substantive issues. First, as to subject matter waiver, the court, unfortunately, turned the rule on its head. The general rule against Rule 502 or the prior case law, because it's not clear given the precise timing whether Rule 502 applies in its own weight. But in this respect, 502 really codifies prior case law. If you have an actual disclosure, the rule generally is that the waiver extends only to the documents actually disclosed. Subject matter waiver is the exception to the rule. And what the government does is, in Quoting 502, it forgets A3, which is the fairness component of the analysis. And you have to look to see whether the party in doing that, whether it's unfair, whether the party intentionally injected the information into the lawsuit in order to make a misleading or selective presentation. And the Second Circuit's case law, both the In Re Grand Jury Proceedings and the In Re Grand Jury Proceedings John Doe, really nails this issue, which is when you're talking about a pre-indictment disclosure to the government, where you're not making a presentation to the ultimate fact finder to the court. You're just presenting the information, responding to a demand. That's not the kind of misleading presentation that creates an unfairness and requires a broader disclosure. That doesn't, QUAOS, though, itself bear the burden of showing that it has not waived the privilege? That's correct. But the rule is that there is no waiver unless there is a degree of unfairness indicated by the intentionally misleading or selective presentation. Here, Quillow simply gave the government, the Skadden, the Cravath documents, which was what the government had asked for. There was nothing misleading. It was a pre-indictment situation. At most, the government says, well, you were trying to avoid being indicted yourself. But the Second Circuit says that's not what we're talking about. Didn't Skadden say that it had not been involved in point? Let's be clear what the sequence is. Okay. All the e-mails that the government points to were produced to the IRS before this sequence started. So they had that when, in 2007, they approached Skadden, and Skadden says, we were asked about a securities issue. And it's very unclear because we've only got the affidavit. If they had that, they could have, the government, since they knew Skadden had been, they knew Skadden was somehow involved. But I guess just to kind of cut to the chase here. Yes. There's some ambiguity in what the level of the disclosure was, what the scope of it was. And I guess my concern is if Quillow has the burden to show that there was no waiver, how did it meet that in this case? Well, the burden is because its disclosure was to give the government specifically what the government asked for in a setting that is a pre-indictment disclosure to the government, who's then going to determine at sole discretion what goes to the grand jury. So you think it's not ambiguous? No. As a matter of law, it's not the kind of disclosure that triggers subject matter waiver under the, under Rule 502 of the prior case law. One question that's, I guess, more of a curiosity, I suppose, than anything else. Did, is there anything in the record about whether Quillow's gave permission to Skadden for the initial disclosure over the telephone that there was no, it was only related to securities-related advice? I have not seen anything in the record. As far as I know, there's nothing in the record as to. And you don't know why Skadden would have volunteered that? No. Okay. No, but the government has not tried to make anything of that. No, I, it's just, all right, so you need to talk about crime fraud before you sit down. Crime fraud. Yes. Here, the question was whether the government met its burden of showing that the Skadden communications were in furtherance of the crime or fraud. We have not argued whether the government met its burden of showing that there was a crime or fraud. I think in light of the guilty pleas, that would have been conclusively resolved. The district court relied solely on the indictment. But the indictment doesn't say anything about Skadden or communications with Skadden. And the dire case from the Fifth Circuit, Judge Higginbotham's analysis, I think, applies here, which is there were two lawyers consulted during the same time period about the subject matter. And the court said, well, we have extrinsic evidence tapes that shows, creates the groundwork for crime fraud as to one of the lawyers. But we don't have, the government hasn't carried its burden of showing it as to the other lawyer. Just because Skadden may have been consulted about matters relating to point, doesn't mean it was in furtherance of the crime or fraud. The government's plea agreement specifies that the aspect of the fraud or the crime was these nonexistent transactions between the two Isle of Man entities. To add some kind of exotic component to this. The two Isle of Man entities. There's not even a suggestion that what Skadden was asked about, and there's no evidence that they ever gave an opinion, but what it was asked about had anything to do with those aspects of the transaction. If they had asked another law firm to opine on the enforceability of a forum selection clause, it wouldn't mean that crime fraud had been shown as to every lawyer who's consulted in any way. And I think that's the teaching of Dyer. And the indictment certainly does not carry the weight, and even if the court were to look at the emails, those don't either. Is your client still in business? I mean, are they actually doing something? There have been subsequent, I'm not sure to the extent the record lays it out, but I think certain businesses have been sold, and I don't know. They like in disillusion or something? No, I don't believe in disillusion. I'm not really capable of saying what the current status is. The entity does exist. Elements of its business have been transferred to other parties. Who pays your fees? Quellos Group. I'm not the one who gets the check. If I was you, I'd be concerned that they were still in business. No, there is still a live entity. I don't think there's any question about that. And the money's not coming from the two people who confessed the crime? No, they are former executives. They're not providing the money to pay your fees? Not that I'm aware of, no. Sometimes you get a large corporation or an entity, and it has many legitimate businesses, and then you get a couple of guys that plead guilty to doing something improper, and they go away, and the business continues. Then you get these kind of small little entities that are created for the purpose of assisting in the perpetration of a fraud, and when they go away, the business goes away. Right. This was never that kind of entity. This was a broader entity with different lines of business, and the government chose not to prosecute Quellos Group. I believe it had a couple of hundred employees, and this was one small aspect of it. It's simply in other transactions, I think, aspects of its business. It's a matter of public record, you know, were transferred, hedge fund operations. Was Quellos a registered representative of any kind with the SEC, either with a securities license or an investment advisory license or any kind of license at all? I'm not sure the record indicates any of that on here, but there's never been a question that Quellos was and remains separate from the two defendants, and I think that resolves it for purposes of Mohawk and Perlman or any of the other issues. Thank you, Counsel. Thank you. Good morning, Your Honors. May it please the Court. My name is Michael Morgan. I represent the United States in this appeal. So why isn't it moot? Well, it's not moot because the Supreme Court says it's not moot. The case United States v. Zolan is pretty much on point here. That was a case where the IRS had issued a summons, the equivalent of a subpoena seeking materials for a criminal investigation. The target, the district court denies to enforce the summons. The government appeals. The target dies during the pendency of the appeal. The criminal investigation ends. The corresponding civil investigation actually ends, and when the case makes it to the Supreme Court, the respondents in the case, they pressed a mootness issue saying, well, the target's dead and the investigation's over. The Supreme Court said, no. This is the Ron Hubbard case, right? This is the Ron Hubbard case, yes. And the Supreme Court said, no, it's not moot. It's sufficiently live because the materials were potentially relevant to an ongoing proceeding, namely there was another civil investigation, tax investigation, as well as potential liability for the Ron Hubbard estate. The point being is that there were ongoing related proceedings for which the materials were relevant. That's the exact same thing that's going on here. The guilt phase may be over. The sentencing phase remains. But you're going to have to issue a new subpoena. Well, Your Honor, I don't think we do. If this appeal is not moot, we won't have to. But you did. Well, it's a belt and suspenders approach. I mean, we think that this appeal is not moot. We think the district court's order is enforceable. But if this court disagrees, we don't want to be in the position of having to start over a month before sentencing. Is that why you did the second subpoena? That's exactly why we did the second subpoena. I mean, if we really believed the appeal was moot, we would have agreed to dismiss the appeal. We don't think so. So what do you hope to prove at sentencing? Are you trying to get related conduct or something? Well, I – I mean, I'm just – Part of the problem is that, you know, we don't know exactly what's in these materials.  Three of which are potentially relevant, as I can tell, because six are billing records. But what I would expect or what the government – What's your best hope at sentencing? Our best hope at sentencing is that Skadden told Quellos that this structure was bogus. And that the defendants disregarded that advice and sought another opinion, duped some other law firms into signing off on the tax shelter. Okay. And so what does that get you at sentencing? Well – I mean, play this out for me. Okay. Okay. I mean, it's one thing – it just goes to the level of their willfulness and their culpability. They've already confessed. Well, they've confessed, sure. But it's the question of how culpable they are. And the district judge is going to want to know fully what was the full nature of their criminal conduct in deciding – we have a sentencing range – in deciding whether I'm going to sentence at the low end or the high end. And if it turns out that these defendants had been told by one of their law firms that you can't do this and they turned around and did it anyway, that is just a level of culpability that is above and beyond what they pled guilty to. And I think the district court should be entitled to hear this. I'm having a hard time with that because they would have had during their plea colloquy to have acknowledged that when they did what they did, they knew what they did was wrong. Well, it's one thing to – So what difference does it make whether somebody told them – I mean, if they knew what they did was wrong, they knew what they did was wrong. It doesn't matter whether somebody else told them they knew what they did was wrong. I simply think that it goes to the level of the willfulness of their conduct. And again, we're talking about sentencing. The judge is entitled to consider all sorts of things at sentencing. Well, I suppose, but then it really is one level removed from what you want to prove at trial. I mean, it's really hard to see when Skadden isn't listed in the indictment and Cravath and the other firm, Brian Cave, I think it was, were both listed in the indictment. It's really hard to see how the crime fraud exception comes into play at all in this case. I can answer that, Your Honor, very easily. I mean, you don't have the indictment. You don't have any of the underlying allegations. You just have a suspicion that they've got some documents. That's – with respect, Your Honor, that's incorrect. The record is this. We're all in agreement now that there's a sufficient record to show that the crime occurred. There was actually some debate about that. Yes, they've conceded that this morning. Not on behalf of the defendants, but on behalf of the – So the question is whether or not there's a reasonable cause to believe that Skadden's advice was sought to further that scheme. The answer to that is in the record. All you have to do is read the e-mails that Quellos has produced. Skadden was retained to opine on point. Point was the hub, the nub of this conspiracy, of this scheme. If you are being retained to opine on point, you are by definition being retained to further the criminal scheme to which they have now pled guilty. That's the crime fraud. I mean, that's just straightforward. Well, except that there's no question that Skadden has not been charged with doing anything wrong in this case or giving advice that helped perpetuate the crime, right? Well – You're not alleged to have. In fact, it would hurt you at sentencing if Skadden had actually said, it's okay, right? Well, correct. But the point of the crime fraud, it's not that Skadden was a knowing participant in the crime fraud. The crime fraud doesn't focus on the law firm. The crime fraud exception focuses on the client, the client being Quellos and the two defendants who at that time were acting on Quellos' behalf. Crime fraud requires that the defendant use the legal advice of the law firm to further the criminal scheme. That's what was going on here. The two defendants were using Skadden's legal advice, soliciting legal advice from Skadden. There's no evidence that they used the legal advice in furtherance of the scheme, right? Well, they actually – we don't – the point is that we don't know – Is there any evidence in the record that they actually used any advice given by Skadden to further the scheme? They consulted with Skadden. They were soliciting an opinion. It is unclear whether an opinion was ever finalized. We don't believe an opinion was – I'm fairly certain this is accurate. I guess I wasn't clear on my question. Is there any evidence in the record that they actually used any opinion from Skadden in furtherance of the criminal scheme? I guess yes. Actually, I think so. I think if you look at the emails and the contents of the emails, they were getting legal advice from Skadden about how to set up this structure. Put it another way, was there any evidence that Skadden's opinion was communicated to anybody except the attorney and the client? No. We do know – I mean, that's correct. We do know that there was no final opinion that was actually given. Or any informal advice that was conveyed to anybody as far as you know in this record. That's correct, but it doesn't have to be communicated to the clients. Again, the point shelter itself is corrupt. We now know that. They have pled guilty to using this corrupt shelter. The emails in the record definitely make clear that Skadden's advice was being sought to set up this shelter. Therefore, Skadden's legal advice was being sought to further the criminal scheme. That's what the emails prove. And so, yes, there is evidence in the record to show that Skadden's legal advice was being sought and implemented and used to further the point scheme. I want to get back. You're dealing with the merit, and of course I understand that. But I want to get back to the issue of the second subpoena for a moment. Okay. There's a concept of superfluity does not vitiate the maxims of jurisprudence. I'm glad to hear about this. But I think that doesn't really work here. Doesn't that really create a ripeness problem for you? I mean, it kind of gets merged with the mootness problem. But, I mean, can you really have a two-track subpoena here? You've got one pre-trial. You've got another one for sentencing. Don't you have to dispose of one or the other? I don't think we do. I don't think there's a requirement that we only pursue, you know, one avenue of relief. And, again, the sentencing subpoena is issued in the event that the appeal is dismissed on mootness grounds. But just from a timing perspective, I understand that the sentencing is set for January. Is that correct? Yes. So whatever we decide, you know, we get something out at some point here in the next little while. But whatever we decide, if it isn't resolved to your satisfaction, you're not going to be able to appeal and get any kind of resolution on the second subpoena in time to help with the sentencing. So why is the government doing this? Why is the government doing the second subpoena? Yeah, why are you doing the second subpoena if superfluity does not vitiate? To be perfectly frank, the second subpoena being returnable on the date of sentencing is an error. That will be an error that's corrected because the court is right, is that if we try to litigate this on the day of sentencing, we're not going to get anywhere. We're going to have to fix that problem. That is a technical problem that I wish I could have had corrected before today, but it hasn't been. So wouldn't you be better off to just dismiss the second subpoena and go with your – take your best shot here? Well, again, I don't think the two are related. I don't think – Of course they're related. They're identical, aren't they? Well, if they're not related, then it is moot. No, I'm not sure about that. I'm saying that they're two different processes. And I think the mootness thing, the problem is that we're not talking about the subpoena.  Right. Whatever happened with that trial subpoena – But the purpose of the trial subpoena initially was to help the government convict these two individuals who have now pled guilty. The purpose of the subpoena has been satisfied. So how do you satisfy the Nixon concerns and prongs going forward since that has been satisfied? Well, going forward – and again, if we're talking about this appeal as the appeal from that order, what you have to look at is what the district court decided in the procedural posture the district court decided it in. All right? If you're asking the continuing relevance of a new subpoena – All right. Let's go back to the first one. The initial subpoena, which is the one before us for all practical purposes, was to get certain information that would help convict these two individuals who have now pled guilty. Right? I – yes. I'm talking about the initial subpoena. Yes. That was the primary purpose. However, had we had that material and had compliance been made in a timely fashion, this material would be before the district court for sentencing purposes. I mean, that's sort of what happens at a trial. When you get your initial material, you've got it. You don't have to go and re-subpoena it to present – But couldn't the government have said at the time they wanted to plead guilty, we'll only let you plead guilty now if you give us this information? I suppose the government could have said that. But it didn't do that. It did not do that. But, again, if we're talking strictly about the mootness issue, we're talking about an order. The truth is, if the defendants really believe, or if Quellos, excuse me, really believe that the plea of guilty sort of obviated the need for the trial subpoena, they should have gone to the district court and asked it to vacate its order. They can still do that, can't they? But they haven't done that. And that's the order that is a live order that, but for the stay issued by this court, would have had to have been complied with. And were this court to lift that – But they had to – you know, I mean, with the stay in hand, if they sought relief with our court, what would be the point of going back to the district court? The stay is in place. I mean, I don't think you can fault them for not going to the district court now or during the interim period between the motions panel and this panel. Well, I think the reason – actually, I think I can fault them for that, simply to the point of being if they're saying that the plea of guilty vitiates not only the trial subpoena but the need to comply with the court's order, they need to go to the court and they're going to say this case is moot. They should go to the district court and say, whatever basis you have for issuing that order, it's gone now. You should vacate that order. And that would, of course, have mooted the appeal. But they didn't. So the order remains live. How can the district court have act when we have a stay in place? The stay is against enforcement. I don't think the stay would prevent the district court from vacating its order. I mean, that would be the relief that the cause would want. I don't think that the stay would prevent the court from doing that. You may be right that it would, but I don't think it would because the stay is against enforcement. If the court were to decide that the order should not be in place anymore, I think the district court could still decide that. I have a minute and a half remaining. I'd like to turn briefly, if the Court gets past the crime fraud, to the waiver issue. There's a threshold problem with the waiver, and it has yet to be addressed by Quell. So I want to address it quickly. It's that it's their burden to show that any of these documents are even privileged. Their privilege log is manifestly deficient. The privilege log does not indicate that the billing records were – there's any – there's no indication in the privilege log that the billing records reflect any type of legal services provided. Under this Court's precedence, that's insufficient to even raise a prima facie case of privilege. With respect to the attorney notes, they're notes. They sound like work product. The only way they could actually be attorney-client is if they relate to conversations between the client and the attorney. We don't have a declaration from the attorney attesting to what is even in broad strokes encompassed in those notes. Under this Court's precedence, that is insufficient to even raise a prima facie case of privilege. So we don't even need to get into the subject matter waiver issue. They haven't carried their burden at the threshold of even making a prima facie case that these documents are privileged. With respect to the waiver, I think the subject matter rule is plain. This was a knowing waiver. I think what we're fighting about is what is the subject matter of it. Or the scope of the waiver. Well, the district court has a factual finding about what the scope of the waiver was and that it wasn't limited. That's a factual finding. We would submit that that finding can only be set aside for clear error. And on this record, it's just not clearly erroneous. It was their burden to show that there was no waiver. The Court found essentially the evidence was in equipoise. That's not a preponderance. They haven't carried their burden. If we have a question about the relevance of the Skadden documents at this point, wouldn't the proper thing to do would be to remand this to the district court for a determination in the first instance of the relevance? Of the continued relevance with respect to the original subpoena. Yeah. I mean, I for one have a question about it. Under, you know, Bowman and Nixon, I don't know why this is even relevant anymore. Well. And if I'm right, why shouldn't the district court determine this in the first instance? We're not a fact-finding body. That's correct. But, again, I think if we're focusing on the order being appealed from, you have to focus on the decision that the court made at the time the court made it, not if later events have overtaken the basis for the court's decision. Essentially, if we remanded it back, we'd be starting over. And that would be the effect of vacating the first order and starting from scratch. But, you know, you haven't received the documents. You sought them for one purpose. You're seeking them for another purpose now. The third party may have different defenses available. That is true. I guess the oddity is, it's the odd procedural posture, is that, again, had there been timely compliance, then the district court would have had the materials. And any of those objections? We set this hearing up so you could meet your trial schedule. So let's not fuss about timely compliance. We're here. You're here. You've got a week left. I'm talking about timely compliance back in May. But, yes, I understand. And it's the odd posture of that plus the stay has sort of made the case procedurally complicated as far as determining what the court should be focusing on. But the government would suggest you've got to focus on the order the court issued, the time the court issued, because that's what's really brought up for review. So at the end of the day, just so I know I'm repeating what I said before, but I want to make sure, basically, the government's aim at this point is to increase the proof on culpability so that the defendants, the government can argue that the court should impose a sentence at the upper end of the guideline range. Is this where we are with this case? I mean, at this stage of the proceedings, yes, that is where we are. But I think that whether they do it. I just want to make sure I understand. Well, yes. I mean, we're done with guilt. So, you know, we're now focusing on sentencing. But that is a relevant consideration for the court. And the government has a relevant need for that material. If the court has no further questions. I think we have an argument in hand. Thank you, Your Honor. Mr. Cooper, we went over. Our questions took your opponent over about three minutes, so we'll give you three minutes. I bet you can do it faster than that. I'm sorry? And I bet you can do it faster than that. I think I can. I have just a couple minor points. First, the Zolan case raised by the government really highlights how distinctive this proceeding is. Zolan involved an IRS investigatory summons for two purposes. It was a discovery advice for a criminal proceeding and a criminal proceeding, a civil tax audit. Once L. Ron Hubbard died, the criminal aspect was gone, but the civil continued. This was a footnote in Zolan. In this case, this was designed for one proceeding and one proceeding only, the trial. Once that trial was over, what was not going to happen, the subpoena was moot. It's important to also understand that the government issued the new subpoena before we even breathed the word of mootness, before we filed anything. They understood that they had to go with a new subpoena, and that raises new issues. All right, Gary. Is it your contention that the government is bound by what it said initially about it being null and void? It's not bound. It was simply correct when it said that. The approval of the initial reaction, it's like when you tell kids when you're taking a test, your first answer is usually the correct one, which it was. Counsel, have you challenged the new subpoena? It hasn't been yet. Has it been served? I'm sorry? Has it been served? Well, I believe it has been served. We just got it on the 16th, but I think if you just – I assume you're going to challenge the new subpoena. No doubt. I would expect it to be challenged. Because if you didn't, then this would be moot for another reason, because the documents would be turned over. I expect it will be challenged, because the same considerations are protecting the privilege. And your concern, your client's concern, I gather, is that Skadden is its attorney for a lot of things, not just this. Right. And you're concerned that were you to, in quotes, waive the privilege here, it would open up Pandora's box, and who knows where that goes? Who knows where it goes, and who knows where that information could be used outside of this entire criminal proceeding. As to – two other propositions first. Why didn't we go to the district court? We respected this court's jurisdiction. Once the issue is on appeal, you go to the court of appeals in the first instance. And we don't think that – I think this is a fairly cut-and-dried legal issue. Does the district court have jurisdiction to revoke its initial subpoena while it's on appeal here? That's an interesting question. I think the reality is there's no need to revoke it because it died a natural death with the guilty pleas. Like Mr. Hubbard. I offer no opinions on Mr. Hubbard. Let me – I come from a different philosophical background. As to – let me just say, as to the evidence being in equipoise, the evidence was on an immaterial issue. The evidence was in equipoise, the district court found, as to whether or not there was a limited waiver agreement. It doesn't matter because as a matter of law in this context, there was not a broad subject matter waiver. So the court was correct, but it should not ultimately affect the result in this case. All right. I think we have the arguments at hand. I want to thank both of you for your presentations. It's a very interesting issue, very interesting case. And with that, we will take it under submission. Thank you. Nice to hear good lawyers.
judges: Ezra, Thomas, Smith M.